Michael W. Peterkin (OSB #823670)
Peterkin Burgess
222 NW Irving Ave.
Bend, OR  97703
(541) 389-2572 phone
(541) 389-6298 fax
mpeterkin@peterkinburgess.com

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PENDLETON DIVISION

| | |
|---|---|
| SOUTH FORK RANCH LLC, an Oregon limited liability company, <br><br> *Plaintiff,* <br><br> v. <br><br> UNITED STATES OF AMERICA, acting by and through the BUREAU OF LAND MANAGEMENT, <br><br> *Defendant.* | Case No. 2:25-cv-00186-HL <br><br> **PLAINTIFF'S  SECOND AMENDED COMPLAINT** <br><br> • **QUIET TITLE (28 U.S.C. § 2409a)** <br><br> • **ADMINISTRATIVE PROCEDURE ACT (5 U.S.C. § 701)** <br><br> (DECLARATORY AND INJUNCTIVE RELIEF ONLY) |

Plaintiff alleges:

## INTRODUCTION

Plaintiff South Fork Ranch, LLC ("SFR") seeks a determination permitted under 28 U.S.C. § 2409a (Quiet Title Action) about the validity of a purported road easement interest claimed by Defendant United States of America, acting through the Bureau of Land Management ("BLM"), over real property owned in fee simple by Plaintiff. The road

**P a g e  1 – PLAINTIFF SOUTH FORK RANCH LLC SECOND AMEND. COMPLAINT**

easement, purportedly granted in 1964 (hereinafter "Easement"), is void or unenforceable because its legal description is fatally incomplete and insufficient to grant any continuous roadway easement across Plaintiff's land.   Therefore, Plaintiff seeks a judicial declaration under Count 1 of its First Claim quieting title because the Easement is void, and neither the BLM nor the public holds a valid or enforceable Easement interest in or across Plaintiff's property.

Alternatively, under the QTA Count 2, Plaintiff seeks a declaration about a 2015 Settlement Agreement that resolved the Easement dispute.  After receiving notice of the easement's invalidity, the BLM acknowledged it was invalid. Consequently, the BLM and Plaintiff's predecessor in title, Waibel Properties, LLC, agreed that BLM could maintain administrative access to the easement roadway, commonly known as Teaters Road, and that Waibel could install locked gates to deny public access. The BLM affirmed the agreement in writing twice. After the gates were installed to prevent public access, the BLM repudiated the 2015 Settlement Agreement. Consequently, Plaintiff seeks a judicial declaration quieting its title under Count 2, holding that the BLM has administrative access on Teaters Road, the public does not have access, and that Plaintiff has a right to relock the Teaters Road gates.

This action was initiated by Waibel after the BLM's repudiation of the 2015 agreement.  (Plaintiff was assigned all Waibel's claims and remedies.) Waibel and BLM negotiated a unilateral contract and filed a copy with this Court (the 2016 Settlement Agreement). Essentially, Waibel agreed to build a "New Road" through its property, and BLM would close Teaters Road to the public.  After Waibel built the New Road in material

**P a g e  2 – PLAINTIFF SOUTH FORK RANCH LLC SECOND AMEND. COMPLAINT**

compliance with the expressed construction specifications and fulfilled all conditions on its part, the BLM repudiated the agreement.  Plaintiff SFR now has two roads on its property that begin and end at the same points.  Damages are not sought and are an insufficient remedy. Consequently, and in the alternative, under the QTA Count 3,  Plaintiff seeks declaratory relief about Teaters Road and the New Road and to determine the rights and obligations of the parties under the 2016 Settlement Agreement.

Plaintiff's Second Claim is brought under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 702–706. Plaintiff requests declaratory and injunctive relief under three counts.  Key requests are set forth below.

Under the APA Count I, Plaintiff asks that BLM's assertion of Easement rights after repudiating the 2015 Settlement Agreement be set aside because an easement acquired through an instrument that is void for lack of a sufficient legal description falls outside BLM's statutory authority to assert or enforce.

Under the APA Count II, Plaintiff asks that BLM's repudiation of the 2016 Settlement Agreement be set aside as arbitrary, capricious, and an abuse of discretion because the New Road was built in material conformance with the contract design and construction specifications, and the New Road was dedicated and accepted by Crook County.

Finally, under the APA Count III, Plaintiff seeks a declaration that BLM is equitably estopped from repudiating the 2016 Settlement Agreement and injunctive relief requiring BLM to perform its obligations in good faith within one year.

**P a g e  3 – PLAINTIFF SOUTH FORK RANCH LLC SECOND AMEND. COMPLAINT**

## JURISDICTION AND VENUE

1.      This Court has subject-matter jurisdiction under 28 U.S.C. § 2409a (Quiet Title Action "QTA") and original jurisdiction over quiet title actions under 28 U.S.C § 1346(f).

2.       Plaintiff's QTA claim accrued in 2014 when Plaintiff's predecessor in title knew or should have known that the disputed easement was defective. This action was timely commenced after notice within the twelve-year statute of limitations under 28 U.S.C. § 2409(g).

3.      This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 (Federal Question) to declare the rights of the parties as provided under 28 U.S.C. § 2201 (Declaratory Judgment Act).  Further, it has subject matter jurisdiction under § 1331 and may provide relief under 5 U.S.C. § 702 (Judicial Review of Agency Action).  Moreover, this Court, sitting in equity, has inherent power to grant complete equitable relief that is reasonably ancillary to claims within its jurisdiction, including the estoppel of a party from taking positions inconsistent with prior representations on which another party has detrimentally relied. *Porter v. Warner Holding Co.*, 328 U.S. 395, 398, 66 S.Ct. 1086 (1946); *Watkins v. U.S. Army*, 875 F.2d 699, 706 (9th Cir. 1989) (*en banc*).

4.      This Court has ancillary and inherent jurisdiction to determine the rights and obligations under settlement agreements between parties before a final judgment is entered. See, *Bryan v. Erie Cnty. Office of Children and Youth*, 752 F.3d 316, 322 (3d Cir. 2014); *T Street Development, LLC v. Dereje and Dereje*, 586 F.3d 6, 10 (D.C. Cir. 2009) (each

**P a g e  4 – PLAINTIFF SOUTH FORK RANCH LLC SECOND AMEND. COMPLAINT**

applying the rationale underlying *Kokkonen v. Guardian Life Insurance Co. of America*, 511 U.S. 375, 114 S.Ct. 1673 (1994)).

5.    Venue is proper before this Court and this Division under 28 U.S.C. § 1402(d) because the real property at issue and the acts at issue arose in Crook County, Oregon.

## PARTIES AND STANDING

6.    Plaintiff SFR is an Oregon limited liability company duly formed and existing under the laws of the state of Oregon.

7.    On May 24, 2023, SFR purchased real property located in Crook County, Oregon, from Waibel Properties, LLC ("Waibel").  A true copy of the vesting deed marked **Exhibit 1** is attached and incorporated herein ("the SFR Property").

8.    Plaintiff SFR is the assignee of "any and all right, title, interest, damages, and claims" that Waibel Properties, LLC and Waibel Ranches, LLC (collectively "Waibel") previously held or alleged.  A true copy of the assignment marked **Exhibit 2** is attached and incorporated herein.

9.    SFR appeared in the Ninth Circuit Court of Appeals in this matter as a named plaintiff-appellant with the consent of Defendant (*Waibel Ranches, LLC, et al., and South Fork Ranch LLC v. United States of America*, No. 22-35703).

10.    At all times material, Defendant United States of America acted with authority through the Bureau of Land Management ("BLM"), an agency of the United States Department of the Interior, with offices in Crook County, Oregon.

11.    The BLM purports to hold an easement interest in Plaintiff's property pursuant to an instrument recorded in Crook County, Oregon, in 1964.

**P a g e  5 – PLAINTIFF SOUTH FORK RANCH LLC SECOND AMEND. COMPLAINT**

12.    On August 1, 1964, the BLM (acting through its regional office in Prineville, Oregon) and the North Fork Livestock Company (one of SFR's predecessors in title) signed an "Access Road Easement" ("Easement"). The primary purpose of the Easement was to provide a logging haul road, which came to be known as Teaters Road.

13.    The Easement insufficiently describes a road easement through Plaintiff's private land. It also purports to provide the people of the United States with access to federal land administered by the United States Forest Service.

14.    A true copy of the 1964 Easement that was re-recorded on June 10, 1965, in Crook County, Oregon, deed records to correct the Parcel 1 description is attached as **Exhibit 3** and incorporated herein.

## FACTUAL BACKGROUND

### (The Gap and the 2015 Settlement Agreement)

15.    Waibel experienced repeated entries into the Property by trespassers using the Easement for illegal poaching, off-road recreation, antler collection, hunting, camping, and littering, all of which caused irreparable harm, including harassed livestock, increased fire risks, and increased risk of personal harm to Waibel and its employees due to confrontations with trespassers, often armed. Since its purchase of the Property in 2023, SFR has suffered similar irreparable harm and danger as alleged above, resulting from the same types of trespasses experienced by Waibel.

16.    In 2014, Waibel investigated the Easement due to BLM's repeated failure to adequately maintain the Easement roadway and control the public's misuse of the Easement to trespass on the Waibel property as alleged above.

**P a g e  6 – PLAINTIFF SOUTH FORK RANCH LLC SECOND AMEND. COMPLAINT**

17.    Waibel commissioned a survey of the Easement in 2014, which was completed on or about August 28, 2014. A true copy of the 2014 Armstrong Surveying and Engineering survey map is attached and incorporated as **Exhibit 4**.  That survey disclosed that the Easement description has a ±351-foot gap, rendering the Easement incomplete and insufficient to grant a continuous roadway easement across the Waibel's property, formerly owned by the 1964 Easement grantor ("the Gap").

18.    By letter of February 12, 2015, Waibel notified BLM and senior personnel in the BLM's Prineville office about the Gap.  Further, no easement includes or otherwise covers the Gap in Section 30, which is on land now owned by SFR.  Until this dispute arose in 2015, the use of Teaters Road was permissive.

19.    BLM acknowledged that the Gap existed and agreed that Waibel could close the road to public travel if Waibel allowed BLM administrative access, which was granted. The grant of administrative access was the consideration for the "2015 Settlement Agreement" that BLM received.

20.    BLM issued a press release dated April 13, 2015, stating, in part, that "[t]he landowner [Waibel] was able to proceed with the closure [of the Teaters Road to public access] because the BLM's Right-of-Way did not cover the entire length of Teaters Road." A true copy of the BLM News Release confirming the 2015 Settlement Agreement is attached as **Exhibit 5** and incorporated herein.

21.    On May 1, 2015, BLM issued a Teaters Road [Easement] Closure Announcement, stating, in part, that "the Easement…is and always has been invalid since its inception," a true copy of which is attached and incorporated as **Exhibit 6**.

**P a g e  7 – PLAINTIFF SOUTH FORK RANCH LLC SECOND AMEND. COMPLAINT**

22.    In reliance on the 2015 Settlement Agreement and Exhibits 5 and 6, Waibel constructed gates across Teaters Road and turnouts at the entry points of its Property at substantial cost, thereby excluding the public from its Property but allowing administrative use of the road by BLM and government permit holders consistent with the agreement.

23.    BLM affirmed the 2015 Settlement Agreement when BLM concurred with the placement of the Waibel gates. Waibel and the BLM agreed to and posted signage at the north and south ends of Teaters Road, notifying the public that the road was closed and no longer accessible to the public.

24.    The BLM representatives who authorized the 2015 Settlement Agreement were duly authorized agents of the United States with actual and apparent authority to bind the BLM and the United States to the terms of the 2015 Settlement Agreement. Alternatively, BLM is bound by the 2015 Settlement Agreement because its agents possessed apparent authority to resolve the Easement disputes, routinely close BLM roads to public travel, and Plaintiff reasonably relied on such authority to its detriment.

25.    BLM complied with the 2015 Settlement Agreement between April 2015 and September 2015. Under the 2015 Settlement Agreement, Waibel satisfied all conditions on its part.

26.    On or about September 22, 2015, BLM repudiated the 2015 Settlement Agreement and demanded that Waibel open the road for public access, which Waibel did later without waiver of any rights or claims.

27.    An actual, present, and justiciable controversy exists between Plaintiff and Defendant concerning the enforceability and effect of the 2015 Settlement Agreement.

**P a g e  8 – PLAINTIFF SOUTH FORK RANCH LLC SECOND AMEND. COMPLAINT**

Plaintiff continues to suffer irreparable harm as a direct result of Defendant's failure to comply with the agreement.

**(The 2016 Settlement Agreement)**

28. Waibel initiated suit against BLM on September 25, 2015. *Waibel Ranches, LLC, et al. v. United States of America*, Case No. 2:15-cv-02071-HL ("*Waibel Case*"). Settlement negotiations were revived and lasted for months among Waibel, the agency attorney, Geoffrey Painter, the Assistant U.S. Attorney, Steve Odell, and Crook County counsel and representatives. After at least 11 drafts of proposed settlement terms, the parties memorialized a settlement agreement and filed it with the Court on May 20, 2016, in the form of a "Joint Motion for Further Extended Stay of Proceedings" (Doc 30). The "Joint Motion" was approved by an Order filed May 23, 2016. Doc 31. A true copy of the "2016 Settlement Agreement" is attached as **Exhibit 7** and incorporated herein.

29. The 2016 Agreement stated that its "primary objectives" were threefold: "(1) restoring public access from Highway 380 to the public lands and National Forest System lands that lie to the north of Plaintiffs' property in a timely fashion; (2) ensuring compliance with all applicable laws and regulations; and (3) achieving a mutually acceptable resolution that will obviate the need to litigate the claims in this Court, thereby allowing the parties to devote their energies and resources toward pursuing, reaching, and implementing such a resolution instead of expending them on any such litigation if possible." The parties then filed numerous stipulated stays of proceedings while Waibel performed under said agreement with the BLM's actual knowledge of Waibel's performance.

30.     The 2016 Settlement Agreement was a unilateral offer by BLM. Waibel accepted the offer by performance when it built the New Road that met the road specifications, donated a 5.5-mile road to the county, which equates to about 48.77 acres of land.  Upon acceptance, a binding contract arose, which has the following core terms:

a) Waible agreed to build a substitute "New Road" to meet the expressed 2016 Agreement "haul route" standard and road construction specifications;

b) the New Road would be dedicated to Crook County for public use;

c) the County must accept the dedication;

d) BLM would initiate a National Environmental Policy Act ("NEPA") review at Waibel's cost, capped at $100,000.00, unless Congress waived the NEPA study upon approval of the property exchange described below.

e) Waibel would exchange a parcel of land for the BLM 160-acre parcel intersected by Teaters Road; and

f) BLM would close Teaters Road except for government administrative access and access by those utilizing their grazing and logging permits.

31.    In or around October 2017, Waibel completed the New Road  after obtaining all governmental permits and studies at a cost of over $3 million, per the standard of a "functional haul route" and specifications stated in the 2016 Settlement Agreement, which included a "design speed of 20 mph" and a "maximum grade of 12% in any given location." Further, said agreement stated: "Any design features of the New Road not addressed by the standards explicitly referenced above [page 3 of the said agreement] will be designed

**P a g e  10 – PLAINTIFF SOUTH FORK RANCH LLC SECOND AMEND. COMPLAINT**

in accordance with the 2012 version of the Oregon Department of Transportation ("ODOT") Design Manual."

32.     The 2016 Settlement Agreement road construction standard and specifications were the product of joint negotiation and agreement with the knowledge and authority of the agencies involved and were intended to balance the burden and the benefits for both parties.

33.     On November 1, 2017, Waibel recorded a "Deed of Dedication" after Crook County resolved to accept the road dedication, thereby establishing the New Road as a Local Access Road (Public Way) as that term is defined under ORS 368.031. Waibel promptly provided BLM with a copy of the dedication.

34.     On or around June 2018, BLM reviewed Waibel engineer's New Road report, road drawings, and inspected the New Road.  BLM requested changes. Waibel agreed to a "punch list" of BLM requested road corrections, which were completed by Waibel's contractor during the fall of 2018.

35.     On or about October 30, 2018, Waibel's engineers certified substantial compliance with the agreed-upon road design and construction standards after inspection and corrections requested by BLM were made.

36.     Waibel tendered $100,000.00 to BLM, as provided in the 2016 Settlement Agreement, to pay for the cost of a NEPA review for the relinquishment of public access over the Easement. BLM did not accept the tender.

37.     Waibel performed the required maintenance on the New Road for two years after its completion in compliance with the 2016 Settlement Agreement, and SFR continues

**P a g e  11 – PLAINTIFF SOUTH FORK RANCH LLC SECOND AMEND. COMPLAINT**

to maintain the New Road.

38.     BLM refused to initiate the NEPA process to close Teaters Road to public travel as required under the 2016 Settlement Agreement.  Instead, it advocated a conflicting road construction standard and specifications adopted from the U.S.F.S. Road Preconstruction Handbook ("Handbook").  BLM then requested road changes that would cost Plaintiff over $2 million.  The parties participated in lengthy, fruitless mediation while this case was repeatedly stayed. On November 15, 2021, BLM repudiated the 2016 Settlement Agreement by refusing to perform its obligation, refusing to negotiate further, and filing a motion to dismiss the *Waibel Case*.  BLM's refusal to initiate the NEPA process to close Teaters Road to public access, consistent with the 2016 Settlement Agreement, was final agency action, or, in the alternative, was action unlawfully withheld or unreasonably delayed.

39.     An actual, present, and justiciable controversy exists between Plaintiff and BLM concerning the enforceability and effect of the 2016 Settlement Agreement, and Plaintiff continues to suffer irreparable harm as a direct result of BLM's failure to comply with the agreement.

**FIRST CLAIM FOR RELIEF**
**COUNT I**
**Quiet Title Action and Declaratory Judgment**
**(Easement)**

40.     Plaintiff realleges and incorporates all preceding paragraphs of this Complaint as if fully set forth herein and asserts that the Court has jurisdiction as alleged above.

**P a g e  12 – PLAINTIFF SOUTH FORK RANCH LLC SECOND AMEND. COMPLAINT**

41.    BLM asserts that the Easement is a valid, enforceable agreement. Plaintiff disagrees. An actual, present, and justiciable controversy exists between Plaintiff and BLM concerning the validity and scope of the Easement.

42.    The Easement does not grant a continuous road easement across the SFR Property because a ±351-foot Gap exists in the Easement description.

43.    The Court should declare that the Easement is void or unenforceable, that neither the BLM nor the public holds a valid or enforceable easement interest in or across Plaintiff's property, and that the SFR Property is clear of any such Easement encumbrance.

## COUNT II
### Quiet Title Action, Declaratory Judgment, and Injunctive Relief
### (2015 Settlement Agreement )

44.    Plaintiff realleges and incorporates paragraphs 1 through 39 of this Complaint as if fully set forth herein and asserts Court jurisdiction as alleged above.

45.    The QTA Count II is pleaded in the alternative, pursuant to Federal Rule of Civil Procedure 8(d)(2) and (3), if the Court determines that relief under Count I is unavailable, insufficient, or does not afford Plaintiff complete relief.

46.    The Court should declare that the 2015 Settlement Agreement was authorized, valid and enforceable; that the Easement is invalid; that BLM has permissive and perpetual administrative access to use Teaters Road, but the public does not have any access rights;  and that Plaintiff has a right to relock the Teaters Road gates. Further, the Court should issue a mandatory injunction ordering Defendant to remove any sign posted on or near Plaintiff's Property that is inconsistent with this Court's judgment, and to post signs stating Teaters Road is not open to the public.

**P a g e  13 – PLAINTIFF SOUTH FORK RANCH LLC SECOND AMEND. COMPLAINT**

## COUNT III
### Quiet Title Action, Declaratory Judgment, and Injunctive Relief
### (2016 Settlement Agreement)

47.    Plaintiff realleges and incorporates paragraphs 1 through 39 of this Complaint as if fully set forth herein and asserts that the Court has jurisdiction as alleged above.

48.    The QTA Count III is pleaded in the alternative, pursuant to Federal Rule of Civil Procedure 8(d)(2) and (3), in the event that the Court determines that relief under Counts I and II is unavailable, insufficient, or does not afford Plaintiff complete relief.

49.    Under the 2016 Settlement Agreement, Waibel performed all conditions on its part to be performed, and Plaintiff is willing and able to perform any remaining conditions.

50.    The Court should declare that the 2016 Settlement Agreement was a unilateral offer that Plaintiff accepted by performance and that BLM is bound to provide the settlement consideration offered.

51.    Further, based on the 2016 Settlement Agreement alleged above and BLM's post-2016 settlement conduct, the Court should separately find and declare:

a)    A binding settlement agreement arose between Waibel and BLM, and the Plaintiff is a successor to, a beneficiary of, and an assignee of that contract.

b)    BLM's interest in the purported Easement that allowed public access was released by performance of Waibel under the 2016 Settlement Agreement and BLM's breach of said agreement.

**P a g e  14 – PLAINTIFF SOUTH FORK RANCH LLC SECOND AMEND. COMPLAINT**

c)       The New Road is a public road and conclusively a safe and suitable substitute road for public travel under the road standard and construction specifications mandated by the 2016 Settlement Agreement and well within AASHTO Design Standards (American Association of State Highway and Transportation Officials) for a **Local Access Road (Public Way)** as that term is defined under ORS 368.031.

d)       A NEPA review is not required if BLM has no legal Easement interest, assuming the Court finds in favor of Plaintiff on Count 1 of its QTA claim.

e)       NEPA review cost is constrained by the 2016 Settlement Agreement in the amount of $100,000 despite the passage of time.

f)       The scope of the NEPA review must be predicated on the fact that the New Road is a safe county road that is well within AAHSTO Design Guidelines for a Local Access Road.

g)       Plaintiff is entitled to interlocutory relief allowing it to close Teaters Road to the public during the pendency of this case.

h)       The Court should issue a mandatory injunction requiring BLM to remove all signs on or around Plaintiff's property that are inconsistent with the Court's judgment and post "No Public Access" signs at the ends of Teaters Road.

<u>**SECOND CLAIM FOR RELIEF**</u>

**Violation of the Federal Administrative Procedures Act 5 U.S.C. § 702**

**52**.       Plaintiff realleges paragraphs 1-39, 49 and 50, and incorporates all preceding paragraphs of this Complaint as if fully set forth herein.

**P a g e  15 – PLAINTIFF SOUTH FORK RANCH LLC SECOND AMEND. COMPLAINT**

**53.** This Court has jurisdiction over this cause of action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 5 U.S.C. §§ 702–706 (the Administrative Procedure Act, "APA"). To the extent sovereign immunity would otherwise bar this claim, it is waived by 5 U.S.C. § 702, which provides that the United States has consented to suit by any person seeking relief other than money damages from agency action. Plaintiff seeks declaratory and injunctive relief only — no money from the Treasury is sought. The damages barrier identified in *Office of Personnel Mgmt. v. Richmond*, 496 U.S. 414, 110 S.Ct. 2465 (1990), is inapplicable because Plaintiff seeks no payment from federal funds. Moreover, the waiver under Section 702 applies to prospective non-monetary equitable relief of the kind sought here. *Bowen v. Massachusetts*, 487 U.S. 879, 893, 108 S.Ct. 2722, 2731 (1988).

**54**. The BLM is an "agency" within the meaning of the APA. 5 U.S.C. § 551(1).

**55.** BLM's actions and omissions described herein constitute "final agency action" within the meaning of 5 U.S.C. § 704 and are reviewable under the APA.

**56**. The BLM's conduct as alleged also constitutes agency action "unlawfully withheld or unreasonably delayed" within the meaning of 5 U.S.C. § 706(1).

**57.** There are no administrative remedies that Plaintiff is required to exhaust before seeking judicial review, or in the alternative, any such remedies have been exhausted or are futile considering the BLM's unequivocal repudiation and refusal to perform under the Settlement Agreements.

**58.** The BLM's actions and omissions described in this complaint are unlawful and should be set aside under one or more of the following APA standards. Under 5 U.S.C. §

**P a g e 16 – PLAINTIFF SOUTH FORK RANCH LLC SECOND AMEND. COMPLAINT**

706, a reviewing court shall hold unlawful and set aside agency action that is: (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, 5 U.S.C. § 706(2)(A); or (2) contrary to constitutional right, power, privilege, or immunity, 5 U.S.C. § 706(2)(B); or (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, 5 U.S.C. § 706(2)(C); or (4) without observance of procedure required by law, 5 U.S.C. § 706(2)(D).

59.    This APA action is filed timely as allowed under Federal Rule of Civil Procedure 15(c)(1)(A) and (B) because it relates back to the date of the original complaint filed in *Waibel Ranches, et al. v. USA*, Case No. 2:15-cv-02071-HL; and it asserts a claim that arose out of the same core of operative facts related to the conduct, transactions, and occurrences alleged or attempted to be alleged in the original complaint.

## COUNT I
### APA Claim
### Declaratory Judgment and Injunctive Relief
### (2015 Settlement Agreement)

60.    Plaintiff realleges and incorporates the preceding paragraphs 1-39, 49-50, and 53-59 of this Complaint as if fully set forth herein and asserts that the Court has inherent and ancillary jurisdiction as alleged above.

61.    The BLM's continued assertion of Easement rights is contrary to BLM's statutory authority and limitations, and fails to implicate a statutory right, within the meaning of 5 U.S.C. § 706(2)(C) because the BLM's authority to acquire, hold, and administer rights-of-way over private land as well as balance the agency's multiple use mandate, which includes balancing private property interests with the interests of the

public, is governed and circumscribed by the Federal Land Policy and Management Act ("FLPMA"), 43 U.S.C. § 1761 *et seq*., applicable implementing regulations and land management plans, and applicable predecessor statutes. The BLM may assert and enforce only those rights-of-way that were lawfully acquired in conformance with these statutes. Allowing the public to travel on an easement acquired through an instrument that is void for lack of a sufficient legal description falls outside the BLM's statutory authority to assert or enforce such a right.

62. The BLM has a legal duty, arising from the invalidity of the Easement under Oregon law and FLPMA, and from its own settlement obligations, to execute and record a release or disclaimer of its claimed easement interest in the SFR Property. The BLM has unreasonably and without lawful justification failed and refused to perform this duty, notwithstanding the BLM's legal obligation to maintain only lawfully acquired property interests.

63. Pursuant to 5 U.S.C. § 706, Plaintiff is entitled to a judgment declaring on one or all of the following and providing injunction relief as follows:

(a) That the repudiation of the 2015 Settlement Agreement and its continued assertion of Easement rights should be set aside because an easement acquired through an instrument that is void for lack of a sufficient legal description falls outside the BLM's statutory authority to assert or enforce;

(b) An injunction ordering BLM to close Teaters Road to public access; and

(c) Ordering Plaintiff to grant Defendant and its designated permit holders perpetual administrative access on Teaters Road;

(d)  Alternatively, permanently enjoin Defendant from allowing public use of the Easement because: a) Defendant has failed to effectively supervise the public's use of the Easement; b) as a direct and foreseeable result, the public has continually trespassed on the SFR Property (including its predecessors in interest when they were in title) causing continuous irreparable harm; and c) the public has a local public access road that begins and ends at the same locations as the Easement roadway.

64.  Plaintiff is a person suffering legal wrong because of agency action or adversely affected or aggrieved by agency action flowing from the BLM's repudiation of its settlement obligations. Plaintiff's interests are within the zone of interests protected by the applicable statutes and constitutional provisions. Plaintiff has no other adequate administrative remedy sufficient to address the BLM's unlawful conduct.

**COUNT II**
**APA Claim**
**(2016 Settlement Agreement)**
**Declaratory Judgment and Injunctive Relief**

65.  Plaintiff realleges and incorporates the preceding paragraphs 1-39, 49-50, and 53-60 of this Complaint as if fully set forth herein and asserts that the Court has inherent and ancillary jurisdiction as alleged above.

66.  The APA Count II is pleaded in the alternative, pursuant to Federal Rule of Civil Procedure 8(d)(2) and (3), in the event that the Court determines that relief under APA Count I is unavailable, insufficient, or does not afford Plaintiff complete relief.

67. Upon information and belief, Carol Benkowsky was the Director of the BLM Prineville Office when the 2016 Settlement Agreement was approved by BLM. She retired from the BLM in 2017.

68. Upon information and belief, Dennis Teitzel replaced Benkowsky as District Manager of the BLM's Prineville Office in 2017. Thereafter, the BLM, acting through Teitzel and other BLM administrators, acted in bad faith, arbitrarily, and capriciously with the intent to interfere with and undermine the 2016 Settlement Agreement in at least the following particulars:

a) Refusing to acknowledge that the 2016 Settlement Agreement set the standards for the design and construction of the New Road and that the New Road is well within AAHSTO Design Guidelines for a Local Access Road.

b) Directing BLM engineers to analyze the New Road under the U.S.F.S pre-construction road design standards, which conflict with the contract terms.

c) Continuing to assert that the federal road standards apply to the New Road, contrary to the 2016 Settlement Agreement.

d) Rejecting the NEPA cost cap of $100,000 that Waibel tendered for the BLM's direct and indirect costs to prepare the NEPA report.

e) Failing to initiate the NEPA process in conformance with the 2016 Settlement Agreement.

f) Refusing to acknowledge that the New Road accepted by Crook County is a safe local public access road that is well within AAHSTO Design Guidelines for a Local Access Road, thereby delaying and prejudicing the NEPA scoping process.

**P a g e  20 – PLAINTIFF SOUTH FORK RANCH LLC SECOND AMEND. COMPLAINT**

69. The BLM's repudiation of the 2016 Settlement Agreement, including but not limited to failing to initiate the NEPA process for the road closure, after receiving full performance from Waibel and after the county road dedication, is arbitrary and capricious in that it entirely disregards the BLM's own prior determination that the easement dispute should and would be resolved under the settlement terms, ignores the binding obligations that BLM voluntarily undertook, and offers no reasoned objective explanation for reversing the BLM's settlement position.

70. When an agency agrees to a road construction standard and specifications, confirms those specifications when demanding post-construction changes, and then attempts to impose conflicting road construction standards after construction, the agency's actions are de facto arbitrary and capricious. Further, the BLM's repudiation of its 2016 Settlement obligations, without any articulated legal or factual basis consistent with the agreement, constitutes an arbitrary and capricious action.

71. BLM failed to provide a reasoned explanation to objectively support its change in position as alleged in paragraph 68.

72. Plaintiff is a person suffering legal wrong because of agency action or adversely affected or aggrieved by agency action flowing from the BLM's repudiation of its settlement obligations. Plaintiff's interests are within the zone of interests protected by the applicable statutes and constitutional provisions. Plaintiff has no other adequate administrative remedy sufficient to address the BLM's unlawful conduct.

73. Pursuant to 5 U.S.C. § 706, Plaintiff is entitled to a judgment declaring one or all of the following and providing injunction relief as follows:

**P a g e  21 – PLAINTIFF SOUTH FORK RANCH LLC SECOND AMEND. COMPLAINT**

(a) That BLM's assertion that the New Road is unsafe is arbitrary, capricious, not in accordance with law, and in excess of its statutory authority;

(b) That BLM is prohibited from demanding that NEPA scoping be based on its subjective determination that the New Road is unsafe merely because it does not meet inapplicable federal road specifications; and

(c) That BLM performs all conditions on its part within one year from judgment in good faith.

**COUNT III**
**APA Claim**
**Equitable Estoppel**
**Declaratory Judgment and Injunctive Relief**

74. Plaintiff realleges and incorporates the preceding paragraphs 1-39, 49-50, and 53-59of this Complaint as if fully set forth herein and asserts that the Court has inherent and ancillary jurisdiction as alleged above.

75. The APA Count III is pleaded in the alternative, pursuant to Federal Rule of Civil Procedure 8(d)(2) and (3), in the event that the Court determines that relief under APA Count I and II is unavailable, insufficient, or does not afford Plaintiff complete relief.

76. BLM's conduct was sufficiently egregious as to constitute a violation of the Due Process Clause of the Fifth Amendment because it induced Waibel to spend over $3 million building the New Road and dedicate 48.77 acres to the county. As such, this Court has jurisdiction over that constitutional claim under 28 U.S.C. § 1331, which does not require a separate statutory waiver of sovereign immunity for prospective non-monetary

relief. *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 690, 69 S.Ct. 1457, 1461 (1949).

77.   BLM, acting with authority, made specific misrepresentations of fact and promises about the 2016 settlement agreement with knowledge of its falsity as alleged above.

78.   Waibel did not know, and had no means of ascertaining, that the BLM would subsequently repudiate the 2016 agreement and its obligations under it.

79.   Waibel reasonably relied on BLM's settlement representations when performing under the 2016 agreement, spending $3 million and dedicating 48.77 acres to the county in reliance on BLM's settlement representations and post-construction representations as alleged above.

80.   Waibel's reliance was objectively reasonable based on the facts alleged above.

81.   As a direct and proximate result of Plaintiff's reliance on BLM's representations, Waibel suffered detriment, including but not limited to the cost of the New Road and the loss of land occupied by the New Road that was dedicated to the county.

82.   BLM's actions as alleged above in paragraphs 69, 70, and 71 are affirmative misconduct that supports equitable estoppel relief.

83.   BLM's current position on the 2016 agreement is directly and materially inconsistent with the expressed terms of the agreement.  BLM lacks a good-faith objective basis to maintain its repudiation of the agreement after it induced Waibel's substantial and irreversible reliance.

84.   Granting equitable estoppel relief in this case would not compel BLM to act

contrary to a statutory mandate, undermine public policy, or require expenditure of federal funds in violation of the Appropriations Clause.

85. Without an estoppel remedy, the purpose and integrity of negotiated settlements between private landowners and federal agencies would be undermined. No principle of sovereign immunity or government immunity from an estoppel remedy was intended by Congress to sanction such a result; instead, denial would promote fundamental and unconscionable injustice.

86. Plaintiff has and continues to suffer legal wrongs and is adversely affected and aggrieved as a direct result of BLM's actions as alleged above. Since 2017, Plaintiff's Property has been burdened by two roads open to public travel, and Plaintiff continues to suffer from BLM's refusal to close Teaters Road and from trespassers' misconduct. Further, Plaintiff cannot be restored to the status quo ante after construction of the New Road and its dedication to the county.

87. Pursuant to 5 U.S.C. § 706, Plaintiff is entitled to a judgment holding that BLM is equitably estopped from denying its 2016 Settlement obligations, and for the following injunctive relief barring BLM and any person acting in concert from the following:

    (a) Asserting that the New Road is unsafe;

    (b) Demanding that NEPA scoping must be based on its subjective determination that the New Road is unsafe merely because the New Road does not meet new imposed road standards and specifications inconsistent with the agreement; and

**P a g e  24 – PLAINTIFF SOUTH FORK RANCH LLC SECOND AMEND. COMPLAINT**

(c)  That BLM performs all conditions on its part within one year from judgment in good faith.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff South Fork Ranch prays for judgment on its

**FIRST CLAIM FOR RELIEF** pursuant to 28 U.S.C §2409a**,** 28 U.S.C. § 1331, 28 U.S.C § 2201, and the court ancillary jurisdiction as follows:

**A.  Count I (Quiet Title Action-Easement):**

1.  For a judgment declaring that the Easement is void or unenforceable, that neither the Defendant nor the public holds a valid or enforceable easement interest in or across Plaintiff's property, and quieting title to the SFR Property by declaring it is free and clear of any such purported Easement encumbrance;

2.  For an order directing Defendant to execute and record, within a time specified by the Court, a quitclaim deed or other instrument releasing and disclaiming all interest under the 1964 Easement from Plaintiff's title to the Subject Property;

3.  Alternatively, for a judgment permanently enjoining Defendant from allowing public use of the purported Easement based on Defendant's and the public's alleged conduct; and

4.  For its costs and disbursements incurred herein and for such other relief as the court deems just and proper.

**B. Count 2 (Quiet Title Action-2015 Settlement Agreement and Easement):**

1.  Alternatively, for a judgment declaring that the 2015 Settlement Agreement was valid and enforceable; that BLM has permissive and perpetual administrative access on

Teaters Road, but the public has no access rights; and that Plaintiff has a right to relock the easement gates;

2. For a mandatory injunction ordering Defendant to remove any sign posted on or near Plaintiff's Property that is inconsistent with this Court's judgment and post "No Public Access" signs; and

3. For its costs and disbursements incurred herein and for such other relief as the court deems just and proper.

C. **Count 3 (Quiet Title Action-2016 Settlement Agreement and Easement):**

1. Alternatively, for a judgment declaring that the 2016 Settlement Agreement is a unilateral offer that Plaintiff performed, and that Defendant is bound to provide the settlement consideration offered;

2. For declarations and relief requested in paragraph 51;

3. For its costs and disbursements incurred herein and for such other relief as the court deems just and proper.

**On its SECOND CLAIM FOR RELIEF** (Violation of the Federal APA, 5 U.S.C. § 706), Plaintiff prays for judgment as follows:

A. **Count I (APA Relief-2015 Settlement Agreement)**

1. For a declaration that the repudiation of the 2015 Settlement Agreement and BLM's continued assertion of Easement rights should be set aside because an easement acquired through an instrument that is void for lack of a sufficient legal description falls outside BLM's statutory authority to assert or enforce;

2. For an injunction ordering BLM to close Teaters Road to public access; and

**P a g e  26 – PLAINTIFF SOUTH FORK RANCH LLC SECOND AMEND. COMPLAINT**

**3.** For a declaration that Defendant and its designated permit holders have a perpetual administrative access on Teaters Road; and

**4.** Alternatively, for a declaration permanently enjoining Defendant from allowing public use of the Easement for the reasons alleged.

### B. Count II (APA Relief-2016 Settlement Agreement)

**1.** For a declaratory judgment pursuant to 5 U.S.C. § 706 that Defendant's actions, as alleged above, are arbitrary, capricious, and an abuse of discretion and without legal authority or without statutory authority;

**2.** For a declaration and injunctive relief alleged above in paragraph; and

**3.** For its costs and disbursements incurred herein and for such other relief as the court deems just and proper.

### C. Count III (APA Relief-Equitable Estoppel)

**1.** For a declaratory judgment holding that BLM is equitably estopped from denying its 2016 Settlement obligations;

**2.** For the following injunctive relief barring Defendant and anyone acting in concert from the following:

(a) Asserting that the New Road is unsafe;

(b) Demanding that NEPA scoping must be based on its subjective determination that the New Road is unsafe merely because the New Road does not meet new imposed road standards and specifications inconsistent with the agreement; and

**P a g e  27 – PLAINTIFF SOUTH FORK RANCH LLC SECOND AMEND. COMPLAINT**

(c)   That BLM performs all conditions on its part within one year from judgment in good faith.

3.  For its costs and disbursements incurred herein and for such other relief as the court deems just and proper.

Respectfully submitted this  17th day of June 2026.

    /s/ *Michael W. Peterkin*
Michael W. Peterkin,
OSB No. 823670
Peterkin Burgess
222 NW Irving Ave.
Bend, OR  97703
(mpeterkin@peterkinburgess.com
Attorney for Plaintiff South Fork Ranch

---

## EXHIBIT LIST

**Ex.  1 – Warranty Deed**

**Ex . 2 – Assignment and Substitution Agreement**

**Ex. 3 -  1964 Easement**

**Ex. 4 – Armstrong Survey Maps**

**Ex. 5 – BLM News Release**

**Ex. 6 – BLM Teaters Road Closure Announcement**

**Ex. 7 -  2016 Settlement Agreement (Joint Motion with Appendices)**

**P a g e  28 – PLAINTIFF SOUTH FORK RANCH LLC SECOND AMEND. COMPLAINT**

**CERTIFICATE OF SERVICE**

I hereby certify that on June 17, 2026, I filed the foregoing document electronically through the CM/ECF system, which caused all parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

U. S. Attorney's Office
Attn: Sean E. Martin
Assistant U.S. Attorney, District of Oregon
*Attorney for Defendant*

<u>  /s/ *Michael W. Peterkin*        </u>
Michael W. Peterkin,
OSB No. 823670
Attorney for Plaintiff South Fork Ranch

**P a g e  1 – CERTIFICATE OF SERVICE**