**EDWARD P. FITCH, OSB # 782026**
Fitch Law Group, P.C.
Email:  ed@fitchlawgroup.com
210 S.W. Fifth Street, Suite 2
Redmond, OR 97756
Telephone:  (541) 316-1588
Telefax:  (541) 316-1943
  *Of Attorneys for Plaintiffs*

**BILLY J. WILLIAMS, OSB # 901366**
United States Attorney
**STEPHEN J. ODELL, OSB # 903530**
Assistant United States Attorney
steve.odell@usdoj.gov
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204
Telephone:  (503) 727-1024
Telefax:  (503) 727-1117
  *Of Attorneys for Defendant*

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PENDLETON DIVISION

| | |
|---|---|
| WAIBEL RANCHES, LLC, an Oregon Limited Liability Company, and WAIBEL PROPERTIES, LCC, an Oregon Limited Liability Company, <br><br> *Plaintiffs,* <br><br> v. <br><br> UNITED STATES BUREAU OF LAND MANAGEMENT, <br><br> *Defendant.* | Case No.: 2:15-cv-2071-SU <br><br> **JOINT MOTION FOR FURTHER EXTENDED STAY OF PROCEEDINGS** <br><br> **Expedited Consideration & Ruling Respectfully Requested** |

Pursuant to Fed. R. Civ. P. 7(b) and LR 7.1, Plaintiffs Waibel Ranches, LLC, and Waibel

Page 1 – JOINT MOTION FOR FURTHER EXTENDED STAY OF PROCEEDINGS
  *Waibel Ranches, LLC, v. Bureau of Land Management,* Case No. 2:15-cv-2071-SU

**EXHIBIT 7**
**Page 1 of 14**

Properties, LLC, and Defendant Bureau of Land Management ("BLM") hereby respectfully and jointly move for a further extension of the stay currently pending in the above-captioned action up to and including July 31, 2016, on the basis of the conditions laid out in the body of this motion below, and subject to additional potential joint extensions as further described below.

As they explained in their most recent Joint Status Report (Dkt. #28), the parties are continuing to work together cooperatively in an effort to accomplish three primary objectives in addressing the issues at stake in this case: (1) restoring public access from Highway 380 to the public lands and National Forest System lands that lie to the north of Plaintiffs' property in a timely fashion; (2) ensuring compliance with all applicable laws and regulations; and (3) achieving a mutually acceptable resolution that will obviate the need to litigate the claims in this Court, thereby allowing the parties to devote their energies and resources toward pursuing, reaching, and implementing such a resolution instead of expending them on any such litigation if possible.

Along these lines, the parties are now in a position to report the following with respect to the next steps each of them intends to take toward the end of satisfying all of these objectives.

First, on their own initiative and at their own expense, and for the purpose of providing an alternate route that will provide for access to the same public lands to the north and the same types of uses at a similar level as those which have historically been provided by Teaters Road, and will be designed so as to require maintenance at no greater a level than that which has generally been required on Teaters Road during the period of its public use, Plaintiffs intend to construct a new road ("New Road") solely on Plaintiffs' private property on Waibel Ranch near the ranch's western boundary, substantially along the route depicted on the map attached as Appendix A. In planning the lay-out of the New Road, Plaintiffs will confer with their

Page 2 – JOINT MOTION FOR FURTHER EXTENDED STAY OF PROCEEDINGS
*Waibel Ranches, LLC, v. Bureau of Land Management,* Case No. 2:15-cv-2071-SU

**EXHIBIT 7**
**Page 2 of 14**

neighbors, including a local representative of The Nature Conservancy ("TNC"), which owns the parcel immediately to the west of where Plaintiffs intend to construct the New Road, in an effort to address any reasonable concerns that TNC or other neighbors may have with any potential effects of the New Road on adjoining parcels.

Plaintiffs intend to construct the New Road to standards so that it may and will function as a haul route.  More particularly, they intend to construct the New Road with a design speed of 20 mph, and to standards described herein as well as the following specific road-design standards:

a) Minimum of 20 feet in width

b) Maximum grade of 12% in any given location

c) Provision of adequate drainage by placement of ditch relief culverts to account for slope and soil conditions, following the direction set forth in the table attached as Appendix B

d) Layback slopes on cut slopes at 2:1 and fill slopes or 3:1 with super-elevation rates for curves at 2-6%

e) Minimum of 12 inches of compacted base aggregate (6 inches of 1-1/2" - 1" and 6 inches of 3/4" - 0)

f) Minimum curve radius of 50 feet in any given location

g) Vehicle turnouts every 600-1,000 feet along entire road

h) 2-4 % crowning of the compacted surface aggregate along the entire road

Any design features of the New Road not addressed by the standards explicitly referenced above will be designed in accordance with the 2012 version of the Oregon Department of Transportation ("ODOT") Design Manual.

In constructing the New Road, Plaintiffs further intend to carry out such construction in compliance with the standards specified in the 2015 version of ODOT's Oregon Standard

Page 3 – JOINT MOTION FOR FURTHER EXTENDED STAY OF PROCEEDINGS
*Waibel Ranches, LLC, v. Bureau of Land Management,* Case No. 2:15-cv-2071-SU

**EXHIBIT 7**
**Page 3 of 14**

Specifications for Construction.

In addition, Plaintiffs intend to have a certified professional engineer produce a set of engineered plans for the New Road, to be stamped and certified by that certified professional engineer, that will meet and be consistent with all of the design and construction standards referenced either generally or specifically above.  Furthermore, Plaintiffs intend to hire a certified professional engineer to ensure that the New Road is constructed in accordance with the above-referenced engineered plans and specifications, and to provide quality assurance consistent with industry standards, to include the review and oversight of the implementation of Plaintiffs' construction quality-control plan.  When the New Road is completed, the certified professional engineer that Plaintiffs have retained for these purposes will produce a stamped letter certifying that the New Road has been constructed in accordance with all of the engineered plans and specifications, design standards, and construction standards referenced either generally or specifically above.

Plaintiffs also agree to maintain the New Road following completion of its construction, including routine maintenance (which, at a minimum will provide for periodic surface grading and drainage, including ditch and culvert maintenance), repair of any road failures, and repairs necessary to address the underlying causes of any failures that might occur, for a period of two years or, if it were to occur earlier, until such time as BLM acquires an easement and/or right-of-way over the New Road from the County in conformance with any and all legal requirements that apply to such an acquisition, as is proposed to occur as described below, at which point, if it does occur, BLM would intend to take on such maintenance responsibilities.

Notwithstanding any other language in this motion, Plaintiffs are solely responsible, and reserve their exclusive rights, to make all determinations about the ultimate placement and

Page 4 – JOINT MOTION FOR FURTHER EXTENDED STAY OF PROCEEDINGS
 *Waibel Ranches, LLC, v. Bureau of Land Management,* Case No. 2:15-cv-2071-SU

**EXHIBIT 7**
**Page 4 of 14**

manner of construction of the New Road.  Plaintiffs intend to begin construction of the New

Road as soon as is practicable upon the Court's granting of this motion, with the goal of having it

completed and available for public use no later than Aug. 10, 2016, to the extent feasible.

Second, upon completion of the New Road, Plaintiffs intend to donate it, and all ownership

interests associated with it, to Crook County ("County").  To facilitate this donation and transfer

of fee ownership of the New Road to the County, the parties have conferred with elected officials

of the County, including County Judge Mike McCabe, who has, by letter dated Feb. 11, 2016

(which is attached as Appendix C), expressed on behalf of the County its agreement in principle

to accept Plaintiffs' donation of the New Road upon its completion as a Local Access Road

(Public Way) as defined under ORS§ 368.031.  It is the parties' understanding that, when the

County does formally accept the New Road upon its completion in accordance with its current

agreement in principle as expressed in the above-referenced letter, the County will keep it open

and available for all appropriate uses given its nature, specifications, and condition, subject to the

need for the County to effect temporary closures from time-to-time for emergencies or purposes

of public safety or other similar exigencies.  It is further the understanding of the parties based on

their conferment with elected officials of the County that the County intends to provide the

United States with an easement and/or right-of-way that encompasses the entire length of the

New Road and is substantially the same as the one the United States currently holds on Teaters

Road and will therefore allow BLM, the Forest Service, and any other agencies or

instrumentalities of the U.S. government to use and maintain the New Road, and allow members

of the public to use the New Road, at a minimum, for the same purposes and uses as have been

made of Teaters Road through early 2015.  The parties will submit any further documentation

reflecting the County's implementation of any of these steps that it is their understanding the

Page 5 – JOINT MOTION FOR FURTHER EXTENDED STAY OF PROCEEDINGS
   *Waibel Ranches, LLC, v. Bureau of Land Management,* Case No. 2:15-cv-2071-SU

**EXHIBIT  7**
**Page 5 of 14**

County intends to take along with future joint status reports or joint motions for further extensions of the pending stay.

Third, because the New Road will be a Local Access Road (Public Way) as defined under ORS § 368.031, and to serve its objective of ensuring that the New Road provides for the same kinds of access and uses as Teaters Road has up through early 2015, BLM proposes that it take on the responsibility to maintain the New Road to the extent its available funding and resources will allow, consistent with the conditions and time frame set forth above.  In stating its proposal in this regard, BLM is not committing to a final decision, or to the expenditure of future funds that the Congress has not yet appropriated, and nothing in this paragraph or motion violates or shall be construed in a manner that would result in a violation of the agency's obligations under the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321 *et seq.*, the Antideficiency Act, 31 U.S.C. § 1341 *et seq.*, or any other statute or regulation by which the agency is bound.

Fourth, upon completion of the New Road and its acceptance by the County as a Local Access Road (Public Way) as described above, the County intends immediately to open and make available for public use the New Road, and Plaintiffs will not erect any barriers or otherwise take any action to impede access to, or otherwise restrict use of, the New Road.

Fifth, if Plaintiffs construct the New Road in accordance with their intent as expressed above, and if the County accepts Plaintiffs' intended donation of the road and offers to convey to the United States an easement and/or right-of-way in accordance with the parties' understanding of intent as expressed above, BLM intends to undertake an appropriate analysis pursuant to NEPA of the proposed action of relinquishing and/or amending to preclude public use of the easement and/or right-of-way the United States presently holds on Teaters Road.  This NEPA analysis would also likely include consideration of the acceptance of the County's offer of an

Page 6 – JOINT MOTION FOR FURTHER EXTENDED STAY OF PROCEEDINGS
*Waibel Ranches, LLC, v. Bureau of Land Management,* Case No. 2:15-cv-2071-SU

**EXHIBIT 7**
**Page 6 of 14**

easement and/or right-of-way on the New Road and making a decision to take on the responsibility for maintenance of the New Road, consistent with BLM's proposal to do so, as discussed above.  In announcing its intent in this regard, BLM is not committing to any particular final decision, but only stating an intent to analyze such a proposed action if and when Plaintiffs and the County take the previously described steps.  Nor is BLM committing to any particular form of or scope for its analysis; in fact, it would note that its intended analysis may include the potential disposition or exchange of the 160-acre federal parcel that BLM manages within the Ranch's borders or related issues.  Although BLM has informally received input about the prospective New Road from a variety of interested parties and adjoining landowners to date, one of the objectives of its intended NEPA analysis would be to provide a more formal opportunity for all affected persons or entities to provide input on the intended proposed action as eventually formulated, and any potential environmental effects it is likely to have, prior to the agency's reaching any final decision in this regard.

Plaintiffs acknowledge that BLM is required to collect processing costs from an applicant for the realty actions it takes upon the request of that applicant, which would be the case for both the proposed modification or relinquishment of the existing easement and/or right-of-way on Teaters Road and the acquisition of a new easement and/or right-of-way on the New Road as referenced above.  Thus, Plaintiffs understand that they would need to pay the processing costs of BLM's realty actions if, after NEPA analysis, the agency were to modify or relinquish the existing easement and/or right-of-way on Teaters Road and/or acquire a new easement and/or right-of-way on the New Road, as well as any other related realty actions involving Plaintiffs' parcel, which, at this time, BLM estimates could amount up to approximately $70,000.  These realty action costs would only be assessed to the extent necessary or actually incurred, however,

Page 7 – JOINT MOTION FOR FURTHER EXTENDED STAY OF PROCEEDINGS
*Waibel Ranches, LLC, v. Bureau of Land Management,* Case No. 2:15-cv-2071-SU

EXHIBIT 7
Page 7 of 14

depending on what such actions would end up entailing.  In addition, Plaintiffs indicate their

willingness to pay BLM for its direct and indirect costs and expenses associated with preparation

of the agency's NEPA analysis on the above-referenced intended proposed action up to an

amount that does not exceed $100,000 in total, accounting for both the realty action costs BLM

ultimately incurs for those realty actions within the scope of the NEPA analysis and the costs of

the NEPA analysis itself.  To effectuate this payment, once BLM has defined the scope of the

proposed action (including the associated realty actions subsumed within that proposed action)

on which it would carry out the NEPA analysis as outlined above, and prior to carrying out the

NEPA analysis or such realty actions, BLM would provide an itemized accounting of the

projected costs associated with the analysis and realty actions in accordance with its regulations,

the total amount of which Plaintiffs would then pay to BLM (again, up to $100,000), subject to

adjustment and/or eventual refund based on the actual costs and expenses ultimately incurred.

With respect to the intended NEPA analysis described above, the parties acknowledge that

the proposed action may allow for the United States to retain its current right-of-way or easement

on Teaters Road insofar as it allows for administrative and haul route uses by BLM and the

Forest Service, or those acting pursuant to their express authority.  To the extent practicable,

however, and in light of the condition of the New Road upon its completion, BLM notes that its

present intention would be to use Teaters Road for administrative purposes only to access its

160-acre parcel within Waibel Ranch from the south gate, if necessary, unless and until it were to

dispose of this parcel, although BLM's final determination along these lines will need to await

and be subject to prior NEPA analysis before it can be made as well.   Notwithstanding the

foregoing or any final determination in this regard, Plaintiffs do not intend to prevent the use of

Teaters Road to the extent it needs to be used for a haul route or for the moving of heavy

Page 8 – JOINT MOTION FOR FURTHER EXTENDED STAY OF PROCEEDINGS
   *Waibel Ranches, LLC, v. Bureau of Land Management,* Case No. 2:15-cv-2071-SU

**EXHIBIT 7**
**Page 8 of 14**

equipment and/or in the instance of a fire or other emergency.

Sixth, Plaintiffs have been working with, and intend to continue to work with, members of the Oregon congressional delegation and their staffs to pursue enactment of legislation in the near term addressing the potential relinquishment or amendment of the easement and/or right-of-way the United States presently holds on Teaters Road and the potential disposition or exchange of the 160-acre federal parcel referenced in the preceding paragraph, and possibly other issues related to Plaintiffs' property. BLM would note that it is not involved, and will not become involved, in Plaintiffs' efforts to pursue any such legislation, nor would it be appropriate for the agency to be, but it is aware of Plaintiffs' efforts along these lines and will provide information that the delegation or their staffs may request in considering any such proposals, as it does in response to all such congressional requests.

Seventh, the parties agree not to pursue any disputed claims or relief related to the validity or scope of the existing easement and/or right-of-way that the United States presently holds and owns for the use of Teaters Road so long as the pending stay in this case is in effect, or the New Road, having been built in accordance with the engineered plans and specifications, design standards, and construction standards referenced or specified above and donated to the County, remains open to the public and federal, state, and local agencies and their agents or contractors for the same uses and providing for the same access to the same public lands to the north and the same types of uses at a similar level as those which have historically been provided by Teaters Road prior to early 2015. In addition, so long as Plaintiffs are continuing to make reasonable progress in constructing the intended New Road in accordance with the standards referenced and specified above so as to provide as soon as is practicable for the same kinds of access and uses as those that Teaters Road has provided prior to early 2015, or for so long as the New Road is

Page 9 – JOINT MOTION FOR FURTHER EXTENDED STAY OF PROCEEDINGS
*Waibel Ranches, LLC, v. Bureau of Land Management,* Case No. 2:15-cv-2071-SU

**EXHIBIT 7**
**Page 9 of 14**

continuing to provide for these same kinds of access and uses, the parties agree to jointly move for one or more further extensions of this stay beyond the one sought by the present motion, until all of the foregoing intended steps set forth above have been completed.  At the same time, both Plaintiffs and BLM reserve the right to move to lift the stay in this case, if one or more of the intended steps described above has been renounced, abandoned, or is no longer being pursued.

In addition, if the New Road is not completed and available for public access as described above by Aug. 10, 2016, Plaintiffs agree to open the existing gates on Teaters Road for such access from Aug. 10-Nov. 30, 2016, and otherwise note their intent to keep the existing gates on Teaters Road closed (except for the authorized uses specifically described above) until Aug. 1, 2017.  If the New Road is still not completed and open for public access as described above by Aug. 1, 2017, Plaintiffs agree that they would as of that date open the existing gates on Teaters Road to allow for such access until such time as the New Road is completed.  These dates are subject to modification, however, if there is evidence of poaching, trespass, or vandalism on Waibel Ranch lands adjacent to Teaters Road while the existing gates on that road are opened in accordance with this paragraph and the parties jointly agree that the injury from such activities warrants closure of the gates.  Any such closure in accordance with the foregoing would remain in effect until the parties jointly agree that reasonable measures have been taken to redress or prevent a recurrence of the types of activities that led to the closure, or the completion and opening of the New Road for the access described above, whichever were to occur first.

By way of clarification as to all of the foregoing expressions of intent and understandings on behalf of each of the respective parties, they would also like to add and confirm that their willingness to move jointly for this stay and proceed with the intended steps set forth above is predicated on a desire to work together collectively and amicably for the common good; this is

Page 10 – JOINT MOTION FOR FURTHER EXTENDED STAY OF PROCEEDINGS
*Waibel Ranches, LLC, v. Bureau of Land Management,* Case No. 2:15-cv-2071-SU

**EXHIBIT 7**
**Page 10 of 14**

particularly the case given that Plaintiffs and BLM are adjoining landowners – "neighbors," less formally.  Thus, neither the filing of this motion by the parties, nor the representations made in it, nor the Court's granting of any of the relief sought by the motion is intended to or should be construed as or may be relied upon as an admission of liability or any indication as to the relative merits of any of the parties' positions on any of the issues involved in the litigation.  Along these same lines, the parties agree not to rely upon this motion or its eventual granting as a basis for seeking compensation or reimbursement for fees, costs, or expenses associated with this case.

In light of the foregoing, the parties respectfully and jointly submit that good cause exists for the Court to extend the pending stay in this action until July 31, 2016.  The parties also agree to file another joint motion for a further extension of the stay beyond that date as described above and/or another joint status report prior to that date to apprise the Court of the latest developments related to effectuation of the intended steps described above.

Jointly and respectfully submitted this 20th day of May 2016.

**BILLY J. WILLIAMS**
United States Attorney
District of Oregon

*s/ Edward P. Fitch*
EDWARD P. FITCH
Fitch Law Group, P.C.
  Of Attorneys for Plaintiffs

*s/ Stephen J. Odell*
STEPHEN J. ODELL
Assistant United States Attorney
  Of Attorneys for Defendant



2000 ft

EXHIBIT 7
Page 12 of 14

| Recommended Spacing for Lateral Drainage Culverts in Various Soil Types [a] | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Erosion Index | | | | | | | | | | |
| Soil Types | 10 | 20 | 30 | 40 | 50 | 60 | 70 | 80 | 90 | 100 |
| Silty sands, sand-silt mixtures, inorganic silts and very fine sands, silty or clayey fine sands | ⊢—⊣ | | | | | | | | | |
| Inorganic silts, micaceous or diatomaceous fine sandy or silty soils, plastic silts, organic silts or organic silty clays or low plasticity, inorganic clays of low to medium plasticity, gravelly clays, sandy clays, silty clays, loam clays | | | ⊢—⊣ | | | | | | | |
| Organic clays of medium to high plasticity, organic silts, inorganic clays of high plasticity, fat clays, clayey sands, sand-clay mixtures, silty-gravels, gravel-sand-silt mixtures | | | | | ⊢—⊣ | | | | | |
| Clayey gravels, gravel-sand-clay mixtures | | | | | | | ∗ | | | |
| Clean sands or clean gravelly sands | | | | | | | | ⊢—⊣ | | |
| Clean gravels or sand-gravel mixtures | | | | | | | | | | ∗ |

[a] Unified Soil Classification

| Recommended Spacing (ft) | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Erosion Index | | | | | | | | | |
| Gradient (%) | 10 | 20 | 30 | 40 | 50 | 60 | 70 | 80 | 90 | 100 |
| 2 | 900 | 1225 | | | | | | | | |
| 3 | 600 | 815 | 1070 | 1205 | | | | | | |
| 4 | 450 | 610 | 800 | 905 · | 1015 | | | | | |
| 5 | 360 | 490 | 640 | 725 | 810 | 865 | 1000 | | | |
| 6 | 300 | 410 | 535 | 605 | 675 | 720 | 835 | 1010 | | |
| 7 | 255 | 350 | 455 | 515 | 580 | 620 | 715 | 865 | 1030 | 1210 |
| 8 | 225 | 305 | 400 | 450 | 505 | 540 | 625 | 755 | 900 | 1055 |
| 9 | 200 | 270 | 355 | 400 | 450 | 480 | 555 | 670 | 800 | 940 |
| 10 | 180 | 245 | 320 | 360 | 405 | 435 | 500 | 605 | 720 | 845 |
| 11 | 165 | 220 | 290 | 330 | 370 | 395 | 455 | 550 | 655 | 770 |
| 12 | 150 | 205 | 265 | 305 | 340 | 360 | 415 | 505 | 600 | 705 |
| 13 | 140 | 190 | 245 | 280 | 310 | 335 | 385 | 465 | 555 | 650 |
| 14 | 130 | 175 | 230 | 260 | 290 | 310 | 355 | 430 | 515 | 605 |
| 15 | 120 | 165 | 215 | 240 | 270 | 300 | 335 | 405 | 480 | 565 |
| 16 | 115 | 20 | 200 | 225 | 255 | 280 | 310 | 380 | 450 | 530 |

Note: This table is based on rainfall intensities of 1 to 2 inches per hour following a 15 minute period with an expected interval recurrence of 25 years. For areas having intensities other than 1 to 2 inches per hour, divide values in the table as follows:

| Rainfall Intensity | Divisor |
|---|---|
| 2-3 inches per hour | 1.50 |
| 3-4 inches per hour | 1.75 |
| 4-5 inches per hour | 2.00 |
| Less than 1 inch per hour | Whatever the intensity (.75, .85, etc.) |

Derived from AASHTO "A Policy on Geometric Design of Highways and Streets, 2004."

SPACING FOR DRAINAGE LATERALS

EXHIBIT 7
Page 13 of 14

# Crook County

300 NE 3rd Street • Prineville, Oregon 97754
Phone (541) 416-6555 • FAX (541) 416-3891

February 11, 2016

**VIA EMAIL AND FIRST CLASS MAIL**

Waibel Ranches LLC
Waibel Properties LLC
c/o Edward P. Fitch
Fitch Law Group, P.C.
210 SW 5th Street, Ste. 2
Redmond, OR 97756

United States Bureau of Land Management
c/o Steve Odell, Assistant United States Attorney
1000 SW Third Avenue, Ste 600
Portland, OR 97204

Re:     *Teaters Road -- Access Road Easement*
          Our File No.:  Road 301

Dear Gentlemen:

Crook County has been advised of the pending lawsuit between Waibel Ranches LLC and Waibel Properties LLC as Plaintiffs, and United States Bureau of Land Management as Defendant, regarding an access road easement crossing a portion of plaintiffs' property commonly referred to as Teaters Road.  Said lawsuit is currently pending in the United States District Court for the District of Oregon, Pendleton Division, as Case No. 2:15-cv-2071.

Crook County has been informed that the parties are attempting to negotiate a resolution of the lawsuit that may include the relocation of Teaters Road.  Because this new road would provide access for the general public to lands controlled by the United States of America, by and through the Bureau of Land Management and the United States Forest Service, it has been proposed that the new road would be donated to and owned by Crook County.  As part of the settlement negotiations, Crook County has been asked to comment regarding the County's willingness to assume ownership of the new road once constructed.

Subject to final approval by the County Court, this letter shall serve as Crook County's agreement in principal to accept the new road as a local access road as set forth in Oregon Revised Statute (ORS) 368.031.

Sincerely,

Mike McCabe, Crook County Judge

**EXHIBIT 7**
**Page 14 of 14**

Mike McCabe, County Judge • Ken Fahlgren, County Commissioner • Seth Crawford, County Commissioner